IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,          )
                                   )
                Plaintiff,         )
                                   )
        v.                         )          Case No. 04-20115-02-JWL
                                   )
JACINTO E. HERNANDEZ,              )
                                   )
                Defendant.         )
                                   )
_____)

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Jacinto Hernandez's motion to

withdraw his guilty plea (Doc. #723).  For the reasons set forth herein, the motion is

denied.

## I.    Background

Defendant and twenty other persons, including his wife, Maria Hernandez, were

charged in a superseding indictment with various drug offenses.  By the scheduled date

of trial, all non-fugitive co-defendants had entered guilty pleas, and only the charges

against defendant and his wife remained for trial.  On that date, August 15, 2006,

defendant entered a plea of guilty to all of the charges against him.  Defendant did not

have a written plea agreement with the Government.  Nevertheless, as a part of the plea,

the Government agreed that it would not seek forfeiture of a residence owned by

defendant and his wife.[1]  In addition, on August 17, 2006, defendant's wife pleaded guilty to a single charge of misprison of a felony, contained in a new information filed against her, and she was subsequently sentenced to a term of 21 months' imprisonment.

The Court's colloquy with defendant at the time of his plea was extensive.  The Court prefaced its examination as follows:

> Mr. Hernandez, in order for the court to determine whether or not it can accept an offer to plead guilty, it has to be persuaded that that offer is being made knowingly and voluntarily, so I need to ask you a series of questions.  Are you aware that that is what we're about to do and are you ready to proceed?

After defendant responded in the affirmative, he was sworn, and he answered subsequent questions under oath.

Defendant testified that he had never been treated for mental illness or addiction to narcotics; that he was not under the influence of any drug or medication or alcohol; and that he had fully discussed the plea with his attorney and was satisfied with the attorney's representation and advice.  After entering a plea of guilty to each charge, defendant responded in the affirmative each time to a series of questions asking whether he understood the specific rights that he was giving up by pleading.  The Court specifically explained that defendant would be admitting to all of the facts alleged in the charges against him, including with respect to the minimum quantities of drugs alleged, even though he might disagree with the Government about the actual quantities involved.

---

[1]At the plea hearing, the Government also stated that, independent of the plea, it had decided not to seek forfeiture of defendant's business.

Defendant testified that he did understand this distinction. The Court explained defendant's possible sentences on each count, including a maximum sentence of life imprisonment on one count, and defendant acknowledged that those sentences were possible.

The Court then engaged in the following colloquy concerning defendant's voluntary decision to enter a plea of guilty:

> Q: We have indicated – your counsel has indicated, and Mr. Hunt [counsel for the Government] has indicated here as well, that there is no plea agreement in this case, meaning that there is no formal written plea agreement, but, as Mr. Hunt indicated earlier, there's at least one commitment that the government has indicated that they are willing to make that is involved in all this, and that has to do with the nonforfeitability of your interest in the property that you hold as tenant-in-common with Maria Hernandez. My question for you now is, are there any other promises or inducements that the government has made to you in order to get you to plead guilty here?
>
> A: No, your Honor.
>
> Q: All right. Has anybody – I'll set aside the government. Has anybody made any sort of promise or inducement to you in order to get you to plead guilty, other than what you've already discussed with us here?
>
> A: No, your Honor.
>
> Q: Has anyone forced or threatened you or your family or your loved ones or your friends or your property or anything like that in any way in order to get you to plead guilty?
>
> A: No, your Honor.
>
> Q: Are you telling me that with regard to these charges [to which] you're offering a plea of guilty that you are entering that plea of

3

guilty freely and voluntarily?

A:     Yes, your Honor.

Q:     And that the only reason you are entering a plea of guilty to these charges is because you are, in fact, guilty of those charges?

A:     Yes, your Honor.

Q:     Have you gone over with your attorney the written petition to enter a plea of guilty?

A:     Yes.

Q:     Do you have any questions about anything that is covered in that petition?

A:     No, your Honor.

Q:     Do you understand that the answers to those questions that are set out in the petition as well as everything that you're answering here today are answers that are made under oath?

A:     Yes.

Q:     In other words, those answers in the petition, you're making under oath, just as you are my questions.  You understand that?

A:     Yes, sir.

Following this colloquy, defendant signed his written Petition to Enter Plea of Guilty and Order Entering Plea.  In that petition, defendant represented under oath that he did the following in connection with the charges against him: "Between Jan. 1, 2002 + August 11, 2007 conspired with Bill Antle and others to sell illegal drugs."  Defendant further represented, among other things, that he had been informed that his maximum punishment included a life sentence; that there were no terms of the agreement to plead;

4

that his counsel had done all that anyone could have done to counsel and assist him, and that he was satisfied with counsel's advice and help; that he understood that the Court will not permit a guilty plea by someone who maintains his innocence, and that he was pleading guilty because he is guilty and does not believe he is innocent; and that his mind was clear, he was not under the influence of a doctor's care or drugs or medications or alcohol, and that he had never been found to be mentally ill.  Defendant requested in his sworn petition that the Court consider, in mitigation of punishment, that he had "voluntarily entered a plea of guilty," and he further represented as follows:

> I offer my plea of "GUILTY" freely and voluntarily, and further state that my plea of guilty is not the result of any force or threats against me, or of any promises made to me other than those noted in this petition. I further offer my plea of "GUILTY" with full understanding of all the matters set forth in the Indictment and in this petition, and in the certificate of my attorney which is attached to this petition.

Defendant's petition also included a signed certification by defendant's counsel, in which counsel certified, among other things, that defendant's representations in the petition were true; that he had explained the maximum penalties to defendant; that defendant's plea accorded with counsel's understanding of the facts related to him by defendant and was consistent with counsel's advice; and that, in counsel's opinion, defendant's guilty plea "is voluntarily and understandingly made."

Counsel for the Government proceeded to set forth, at length and in some detail,

5

the evidence against defendant on each count.  That evidence included the following:

(1)     expected testimony from co-defendant Lewis LaMonte Smith (who had already pleaded guilty) that he had a continual relationship with defendant in which he received shipments of 400 to 800 pounds of marijuana from defendant over a period of years;

(2)     expected testimony from co-defendant Gerardo Reyes-Lopez (who had already pleaded guilty) that he delivered bulk quantities of marijuana to defendant, sometimes in excess of 1000 pounds, on a monthly basis for a long period of time;

(3)     wiretap evidence showing that defendant was working with co-defendant Bill Antle (defendant's partner in a transmission business) to distribute marijuana;

(4)     the seizure of 719 pounds of marijuana from a trailer driven by Mr. Antle;

(5)     the seizure of 400 pounds of marijuana delivered by defendant and Mr. Antle to Mr. Smith;

(6)     defendant's attempt to take delivery of 355 pounds of marijuana shipped by Mr. Reyes-Lopez that was instead seized by the FBI;

(7)     defendant's previous arrest in a car that contained 50 pounds of marijuana;

(8)     the seizure of 551 pounds of marijuana that was shipped by Mr. Reyes-Lopez and intended for defendant;

(9)     evidence that a load of 350 pounds of marijuana went to defendant and was resold;

(10)    evidence that agents observed defendant and Mr. Antle and another person deliver to Mr. Smith 350 to 400 pounds of marijuana, which was seized after defendant's departure;

(11)    expected testimony from Mr. Antle (who had already pleaded guilty) that he stored 100 kilograms of cocaine for defendant on one occasion;

6

(12)    evidence that defendant received shipments of approximately 55 to 60 kilograms of cocaine;

(13)    the seizure of two kilograms of cocaine from a trailer loaded by defendant and Mr. Antle;

(14)    the seizure of 530 grams of cocaine that had been delivered to defendant's business; and

(15)    evidence of various purchases of cocaine from defendant by confidential sources wearing wires.

When the Court asked defendant whether he had any disagreements with the Government's recitation of its evidence in support of the conspiracy charge against him, defendant responded that the shipment in one instance was not cocaine: "The drugs came.  I saw how they did it.  But it was not cocaine at all."  Defendant admitted, however, that the Government had evidence of his involvement and agreement in the distribution of over 1000 kilograms of marijuana and the distribution of at least five kilograms of cocaine.  Defendant also acknowledged that the Government had evidence to support the other charges involving controlled buys of cocaine, delivery of over 100 kilograms of marijuana, and the use of a cell phone to engage in drug trafficking.

The Court then engaged in a final colloquy with defendant:

Q:    Are you admitting to me then that you did do, with the qualifications and modifications that we have made here, what counsel for the government said you did?

A:    Yes, sir.

Q:    All right.  And did you realize at the time that what you were doing was in violation of the law?

7

A:     Yes, your Honor.

Q:     And do you believe that you were mentally competent at the time you did this in the sense that you knew the difference between right and wrong?

A:     Yes, your Honor.

Q:     Do you understand that if you did not plead guilty but instead went to trial on any or all of these charges the government would have to prove each and every element of these charges to the satisfaction of a jury beyond a reasonable doubt?

A:     Yes, your Honor.

Q:     Now, you've gone over this matter with your attorney, and you've decided that what you want to do is to enter a plea of guilty to the charges contained in Counts 1, 5, 6, 7, 8, and 9 of the superseding indictment without a plea agreement; is that correct?

A:     Yes, your Honor.

Q:     This decision to enter a plea of guilty is your decision and not your attorney's decision; is that correct?

A:     Yes, your Honor.

The Court then found that defendant's plea was a knowing and voluntary plea, supported by a basis in fact containing the essential elements of the crimes charged, and the Court accepted the plea and adjudged defendant guilty of the charged offenses.  The Court signed the written order, which also contained the following findings:

I find that the plea of guilty was made be the defendant freely, voluntarily, and because [he] is guilty as charged, and not out of ignorance, fear, inadvertence or coercion, and with full understanding of its consequences.  I further find that the defendant has admitted the essential elements of the crime charged and is mentally competent.

8

The Court notes now that its finding that defendant's plea was knowing and voluntary was based on defendant's sworn statements before it and its own observations of defendant during the plea hearing.

The Presentence Report for defendant recommended a sentence range of 292 to 365 months' imprisonment.  On January 24, 2007, the Government filed a sentencing memorandum (Doc. #712) seeking a sentencing range of life in prison, based on an allegation that defendant had obstructed justice, as evidenced by his statement in prison to another inmate that a particular witness against him would be killed for cooperating with the Government.  On January 31, 2007, defendant filed the instant motion to withdraw his guilty plea.

## II.   Discussion

In his pro se motion, defendant states that the "only reason" for his guilty plea was because the Government threatened to put his wife in prison and seize his assets. In the supporting brief submitted by defendant's counsel, defendant also alleges that Government agents informed co-defendants that defendant was cooperating; that defendant and his family then received threats; and that he pleaded guilty under the belief that, if he pleaded and received a long sentence, it would appear that he in fact was not cooperating with the Government.  Defendant thus seeks to withdraw his guilty plea on the basis that the plea was not voluntary, but was instead coerced by the pressure of the package plea deal and the threats to him and his family.

9

A.   Voluntariness of Guilty Plea

The Court first addresses the voluntariness of defendant's plea. *See United States v. Carr*, 80 F.3d 413, 416 (10th Cir. 1996). "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)). A guilty plea is invalid if the plea was coerced. *See id.*

Defendant argues that his plea was coerced in part because it was a "package deal" plea, involving his wife's guilty plea to a single, new charge shortly after his own plea. Defendant did not have a written plea agreement, however, and the only agreement made by the Government in connection with his plea related to the forfeiture of his residence. Defendant has not offered any evidence or even alleged that his wife or anyone else put any pressure on him to join in a package deal. Moreover, if there was a package deal to spare his wife a longer sentence here, then allowing defendant to withdraw his plea would allow him to enjoy the benefit of his original plea (his wife's reduced sentence) while depriving the Government of its benefit (conviction of defendant without a trial).

A package deal plea, in itself, does not render the plea involuntary. Defendant has not provided evidence or alleged any facts to suggest that the structure or application of the plea deal was improperly coercive in this case. *See id.* at 417. A defendant's choice in this regard must be respected, and if he elects to sacrifice himself to ensure

10

leniency for another, that is his choice.  *See id.* (citing *Mosier v. Murphy*, 790 F.2d 62,

66 (10th Cir. 1986)).  Thus, to the extent that there was a package deal here, defendant

voluntarily chose that course of action and reaped the benefit of that choice.  The mere

fact that the plea was part of a package deal, without more, does not make defendant's

plea involuntary here.

Defendant also argues that his plea was not voluntary because of threats received

by him and his family from co-defendants who believed that he was cooperating with the

Government.  The Court rejects this argument.

First, defendant has provided no evidence of such threats.  Nor has defendant

provided any details concerning the nature or timing of these alleged threats.  Nor has

defendant provided any evidence or details to support the allegation that the Government

told others that defendant was cooperating.

The Court also notes that defendant's argument is inherently illogical.  Defendant

claims that he pleaded guilty so that he would receive a substantial sentence, which

would then convince his co-defendants that he was not cooperating with the

Government.  In fact, the likelihood of his having cooperated would appear to be

*greater*, not lesser, from defendant's entering into a plea agreement with the Government

that spared his house and a long sentence for his wife.

Finally, the Court notes that defendant, in his pro se, handwritten motion, did not

mention any such threats as a basis for the alleged involuntariness of his plea, instead

stating that the "only reason" for his plea was the Government's intent to imprison his

wife and forfeit his assets. That omission makes more suspect the allegation in defendant's supporting brief (written by counsel) that his plea was coerced by threats of physical harm.

As set forth above, the colloquy at defendant's plea hearing was extensive, and defendant stated under oath, in writing and orally, that there had been no threats or inducements for him to plead guilty, and that his plea was knowing and voluntary. *See United States v. Jones*, 168 F.3d 1217, 1220 (10th Cir. 1999) ("If Defendant was being coerced into pleading guilty, he should have so stated to the district court."). Defendant's counsel certified his belief that defendant's plea was voluntary. This Court found, after observing defendant and hearing his testimony, that the plea had been knowingly and voluntarily made. Defendant has not provided evidence or credible argument to overcome the strong evidence that defendant's plea of guilty was knowing and voluntary. Accordingly, the Court again finds that defendant's plea was voluntary, and therefore valid.

B.   <u>Withdrawal of Guilty Plea</u>

Rule 11(d) governs defendant's motion to withdrawn his guilty plea. *See* Fed. R. Crim. P. 11(d). That rule provides that a defendant may withdraw a plea of guilty prior to sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). A defendant does not have an absolute right to withdraw his plea. *See United States v. Hickok*, 907 F.2d 983, 985 (10th Cir. 1990).

Defendant bears the burden of establishing a "fair and just reason" for withdrawal of his plea. *See id.* Unless defendant first meets that burden, possible prejudice to the Government need not be considered. *See id.* at 986-87. Dissatisfaction with the length of a sentence is not a sufficient reason for the withdrawal of a guilty plea. *See United States v. Elias*, 937 F.2d 1514, 1520 (10th Cir. 1991). Nor is a change of heart a sufficient basis for withdrawal. *See Hickok*, 907 F.2d at 986. It is within the sound discretion of the district court to determine the circumstances that justify the withdrawal of a guilty plea. *See Jones*, 168 F.3d at 1219.

The Tenth Circuit weighs the following seven factors in considering whether a defendant has met its burden of showing that he is entitled to withdraw his guilty plea:

> (1) whether the defendant has asserted his innocence; (2) whether the government will be prejudiced if the motion is granted; (3) whether the defendant has delayed in filing the motion; (4) the inconvenience to the court if the motion is granted; (5) the quality of the defendant's assistance of counsel; (6) whether the plea was knowing and voluntary; and (7) whether the granting of the motion would cause a waste of judicial resources.

*United States v. Siedlik*, 231 F.3d 744, 749 (10th Cir. 2000); *see also Hickok*, 907 F.2d at 985 n.2. The Court considers each factor in turn.

(1)     ASSERTION OF INNOCENCE: Defendant, in his motion, has asserted his belief that he is innocent of the charges against him. A defendant's assertion of his subjective belief in his own innocence, however, "does not mandate allowing him to withdraw his plea of guilty." *Hickok*, 907 F.2d at 985 n.2. Defendant's present assertion is undermined by his repeated admissions under oath at the plea hearing and in his plea

petition that he was in fact guilty of the charged crimes.  The Court notes in this regard that defendant did not perfunctorily admit his guilt during the plea colloquy, as might a person who truly believed himself innocent but who wished nonetheless to plead guilty. Instead, defendant specifically took issue with the Government's allegations concerning the particular quantities of the drugs at issue and with the particular drug involved at one location, while still admitting that the required thresholds had been met and that he was therefore guilty as charged.  This distinction, made by defendant under oath, severely undercuts any present assertion of innocence.

(2)    PREJUDICE TO THE GOVERNMENT:   There is no question that the Government will suffer substantial prejudice if defendant is permitted to withdraw his plea.  Defendant did not plead guilty until the scheduled trial date, and defendant's case is complex and involves many witnesses; thus, the Government will be forced to repeat much of its process of preparing for trial.  *See Siedlik*, 231 F.3d at 749.  The Government will be required to locate again a large number of witnesses, reissue many subpoenas, and pay witness expenses.  *See Jones*, 168 F.3d at 1220; *United States v. Kramer*, 168 F.3d 1196, 1202 (10th Cir. 1999); *Carr*, 80 F.3d at 420.   Some witnesses against defendant have already been sentenced and received the benefit of a departure for substantial assistance to the Government, thereby reducing their incentive to provide truthful testimony in a future trial of defendant.  *See Carr*, 80 F.3d at 420.  Government personnel will be required to disrupt their current work on other cases in order to revisit this case.  *See Jones*, 168 F.3d at 1220; *Carr*, 80 F.3d at 420.  This factor weighs against

14

defendant.

(3)     DELAY IN FILING OF MOTION:  Defendant did not file his motion to withdraw his plea until five-and-one-half months had passed since the plea.  The Tenth Circuit has stressed that "[s]uch extended delays weigh against granting a withdrawal motion because they often result in substantial prejudice to the government and may suggest manipulation by the defendant." *Carr*, 80 F.3d at 420 (involving delay of three months).

> If the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to support withdrawal must have considerable force.  The movant's reasons must meet exceptionally high standards where the delay between the plea and the withdrawal motion has substantially prejudiced the Government's ability to prosecute the case.

*Id.* (quoting *United States v. Vidakovich*, 911 F.2d 435, 439-40 (10th Cir. 1990)). Defendant has not offered any reason for the long delay in the filing of his motion, and he had the full benefit of counsel during that period.  The delay and the close proximity of the motion to the Government's filing of its sentencing brief, which revealed defendant's obstruction of justice and the Government's intent to seek a life sentence, indicate strongly that defendant's motion "may be more related to change of heart in light of developments of the sentence rather than for any substantive reason that is cognizable at law." *See Siedlik*, 231 F.3d at 749-50; *see also Elias*, 937 F.2d at 1520 (dissatisfaction with sentence is not a sufficient basis for withdrawal); *Hickok*, 907 F.2d at 986 (change of heart is not a sufficient basis for withdrawal).  Accordingly, this factor

weighs against permitting withdrawal of the plea here.

(4)     INCONVENIENCE TO THE COURT:   As in *Siedlik*, this Court "would be substantially inconvenienced by multiplying proceedings after a knowing and voluntary plea of guilty has been entered." *Siedlik*, 231 F.3d at 750.  Scheduling such a lengthy trial would severely disrupt this Court's already-crowded docket.  This factor also weighs against defendant.

(5)     QUALITY OF ASSISTANCE OF COUNSEL:     Defendant has not indicated any dissatisfaction with his counsel's advice or representation concerning his guilty plea, and he stated under oath at the plea hearing and in his plea petition that his counsel's assistance had been adequate in that regard.  Accordingly, this factor weighs against granting defendant's motion.

(6)     KNOWING AND VOLUNTARY PLEA:  As explained above, this Court finds that defendant's plea was knowing and voluntary, and this factor therefore weighs against permitting withdrawal here.

(7)     WASTE OF JUDICIAL RESOURCES:     Permitting withdrawal of defendant's guilty plea would inevitably cause a waste of judicial resources. *See Siedlik*, 231 F.3d at 750.  "[W]hen you unnecessarily multiply judicial proceedings to retrace matters that were inquired into exhaustively, that is certainly within the ambit of the waste of judicial resources." *Id.*  The certainty that judicial resources would be wasted here is shown by the unlikelihood "that a trial would produce a result any different than his plea." *See Kramer*, 168 F.3d at 1202.  In this case, the evidence of defendant's guilt

16

is overwhelming, as shown not only by the Government's recitation of its evidence and defendant's sworn admissions of his guilt in light of that evidence, but also by the number of co-defendants whose sworn testimony at plea hearings clearly implicated defendant.  *See Carr*, 80 F.3d at 421 n.5 (likelihood of conviction has been considered as an additional factor with respect to withdrawal of a guilty plea); *see also United States v. Black*, 201 F.3d 1296, 1300 (10th Cir. 2000) (in weighing factors against withdrawal of plea, noting that, although the defendant asserted his innocence, testimony from a government witness supported the charge).  This factor, then, weighs heavily against defendant.

Accordingly, the only factor that might weigh in defendant's favor is the fact that he now asserts his innocence, although the credibility of that assertion is quite suspect, as set forth above.  Considered as a whole, the relevant factors weigh decisively against permitting defendant to withdraw his guilty plea in this case.  *See, e.g.*, *Siedlik*, 231 F.3d at 749; *Jones*, 168 F.3d at 1220-21; *Kramer*, 168 F.3d at 1202; *Carr*, 80 F.3d at 420-21. The Court is satisfied that defendant's plea was knowing and voluntary, and he has not offered any "fair and just reason" for withdrawal of his plea.  Therefore, defendant's motion is denied.[2]

---

[2]Defendant has not presented significant questions concerning the voluntariness of his plea, and his allegations contradict the record and are incredible and conclusory; therefore, defendant's motion may be decided without a hearing.  *See United States v. Carter*, No. 03-1208, 109 Fed. App'x 296, 2004 WL2030291, at *2 (10th Cir. Sept. 13, 2004) (unpub. op.).

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion to withdraw his guilty plea (Doc. #723) is hereby denied.  Defendant's sentencing will be set by subsequent order of the Court.

IT IS SO ORDERED.

Dated this 3rd day of April, 2007, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

18