# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | Case No. 04-20115 |
| ) | 09-2418 |
| JACINTO HERNANDEZ, ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Jacinto Hernandez pled guilty to six counts of drug offenses, including conspiracy to distribute marijuana and cocaine, distribution of marijuana and cocaine, and use of a communication facility for a drug trafficking crime. He was sentenced to 288 months in prison. The Tenth Circuit affirmed his conviction and sentence. *United States v. Hernandez*, 277 Fed. App'x 775 (10th Cir. 2008).

Mr. Hernandez has now filed a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (doc. 872) and a memorandum in support (doc. 876). The Government filed a response (doc. 879) opposing the motion. Mr. Hernandez filed a reply (doc. 885), two "notices" relevant to his motion (docs. 889 & 891), and supplemental memorandum in support (doc. 908). After considering these documents and the record in this case, and for the reasons set forth below, the court denies Mr. Hernandez's § 2255 petition.

**1. Standard of Review**

Section 2255 entitles a prisoner to relief "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. The court must hold an evidentiary hearing on a section 2255 motion "'[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995) (quoting § 2255). A court need not grant an evidentiary hearing where the factual allegations are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also United States v. Sanchez*, No. 96-7039, 1997 WL 8842, *3 (10th Cir. 1997) ("[D]efendant's conclusory allegations . . . which contradict the record made at the plea hearing, were insufficient to require an evidentiary hearing.").

**2. Discussion**

Between his § 2255 petition, his memorandum in support, the various notices he filed, and his supplemental memo, Mr. Hernandez raises several arguments to be

2

addressed. Nearly all are couched as ineffective assistance of counsel claims.[1]

To obtain relief under § 2255 on the grounds of ineffective assistance of counsel, a petitioner must establish that his lawyer's performance was deficient as compared to an objective standard of reasonable performance. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). "In applying this test, we give considerable deference to an attorney's strategic decisions and 'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690). As the one raising the challenge, the petitioner "bears the burden of establishing that his trial counsel 'made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Sallahdin v. Mullin*, 380 F.3d 1242, 1247-48 (10th Cir. 2004) (quoting *Strickland*, 466 U.S. at 687).

---

[1] In his petition, Mr. Hernandez contends that his plea was not made knowingly or voluntarily because he was never informed about the statutory elements of the crime. (Doc. 872, p. 4.) His memorandum in support of the petition explains this claim as an ineffective assistance claim. To the extent Mr. Hernandez is attempting to challenge his plea directly, that claim is procedurally defaulted because he failed to raise it on direct appeal. *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994) (noting that § 2255 motions "are not available to test the legality of matters which should have been raised on direct appeal"). Ineffective assistance of appellate counsel can establish cause to overcome the procedural bar, *United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993), and Mr. Hernandez does suggest that his attorney was ineffective for failing to raise this argument on appeal. As discussed in this order, however, that claim cannot satisfy the *Strickland* standard for relief, and so it cannot serve as cause to excuse the procedural default.

3

The petitioner must also prove that counsel's deficient performance prejudiced his defense, "depriving him of a fair trial with a reliable result." *United States v. Orange*, 447 F.3d 792, 796 (10th Cir. 2006) (citing *Strickland*, 466 U.S. at 687). Thus, to satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that but for counsel's alleged errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

Because the petitioner "must demonstrate both *Strickland* prongs to establish his claim, a failure to prove either one is dispositive." *Orange*, 447 F.3d at 796-97 (citing *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000)). "The performance component need not be addressed first." *Smith*, 528 U.S. at 286 n.14. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697; *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve.").

A.   Statutory Elements and Mandatory Minimums

Mr. Hernandez asserts that his attorney was ineffective because Mr. Hernandez was not informed of the statutory elements or the mandatory minimum sentences for the charged crimes prior to his plea. Mr. Hernandez's contention, however, is belied by the record.

During the plea hearing, this court reviewed the possible sentences for each count to which Mr. Hernandez pled guilty. (Doc. 782, pp. 9-18.) Indeed the court specifically

4

mentioned the mandatory minimum sentences involved. Mr. Hernandez indicted that he understood those terms.

As to the precise elements of each count, Mr. Hernandez waived the reading of the relevant charges of the superceding indictment at his arraignment hearing (doc. 223). He similarly waived the reading of the indictment at the change of plea hearing, indicating that he understood and was fully aware of the charges (doc. 782, p. 4). The petition to plead guilty that Mr. Hernandez signed indicates that he had received a copy of the indictment and that he had read it and discussed it with his attorney (doc. 559). In open court, Mr. Hernandez assured the court that he had gone over the petition to plead guilty with his attorney and that he had no questions about anything contained in it (doc. 782, p. 27). Thus the record contradicts Mr. Hernandez's allegations that he was not informed about the charges and possible penalties. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court [affirming a plea agreement] carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.")

    B.    Safety Valve

Mr. Hernandez contends that his attorney was ineffective for failing to pursue a safety valve exception during sentencing. Under 18 U.S.C. § 3553(f), known as the safety valve exception, courts may "disregard a statutory mandatory minimum sentence and instead impose a sentence within the advisory sentencing guidelines range, if the

5

defendant meets five criteria." *United States v. Altamirano-Quintero*, 511 F.3d 1087, 1090 (10th Cir. 2007). Specifically, a defendant must satisfy the following requirements:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> (3) the offense did not result in death or serious bodily injury to any person;
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f).

Mr. Hernandez fails to satisfy at least two of the criteria: the court found him to be a leader/organizer of the drug conspiracy; and he failed to truthfully provide the Government with full information, even referring to his attorney's suggestion that he cooperate with the Government as "a joke."[2] He would thus not be eligible for the safety valve exception.

Moreover, Mr. Hernandez's sentence of 288 months was within the guideline

---

[2] "When [I] asked [my attorney] whether there was any way [I] could receive a lower sentence, all [my attorney] kept telling [me] was to inform on [my] co-conspirators, which [I] dismissed as a joke by [my attorney]." (Doc. 876, p. 11.)

6

range (235-293 months), which was above the ten-year mandatory minimum sentence. As such, the safety value could not provide relief in his case. *United States v. Morales-Morales*, No. 02-20082-02, 2005 WL 3845347, at *6 n.4 (D. Kan. Jan.7, 2005) (finding safety valve argument moot because the bottom of the applicable guideline range was greater than statutory minimum).

Nonetheless, Mr. Hernandez argues that he should still have been permitted the chance to present evidence that he was safety valve eligible. Even if he had been afforded that opportunity, however, the government and the sentencing court may not have believed that he had provided a full and truthful account of his knowledge concerning the offense. *See, e.g.*, *United States v. Stephenson*, 452 F.3d 1173, 1180-81 (10th Cir. 2006) (rejecting defendant's argument that his proffer letter was forthcoming enough to garner safety valve relief from the mandatory minimum sentence). "That is because safety valve consideration is just that—consideration." *United States v. Landsaw*, No. 05-3152, 206 Fed.Appx. 773, 776 (10th Cir. 2006).

As such, Mr. Hernandez's attorney was not ineffective for not raising the safety valve argument.

C. Coercion

Mr. Hernandez argues that his attorney was ineffective for advising him to plead guilty despite his contention that he was coerced into committing the crimes. Mr. Hernandez asserts that his attorney should have informed him that he could raise a coercion defense at trial.

7

Mr. Hernandez raised the same argument in his motion to withdraw his guilty plea. The court found no factual basis to support this argument that Mr. Hernandez committed the charged crimes out of fear of physical harm. Additionally, Mr. Hernandez's attorney raised the possibility of coercion as a mitigating factor during sentencing, but the court did not use that information to lower Mr. Hernandez's sentence. Thus, it appears that any possible coercion defense would likely have been unsuccessful and so Mr. Hernandez's attorney was not ineffective for failing to mention it as a possible trial defense.

Moreover, although Mr. Hernandez suggests that he would not have pled guilty had his attorney informed him of a coercion defense, his "mere allegation" that he would have insisted on trial, although necessary, is ultimately insufficient to entitle him to relief. *United States v. Gordon*, 4 F.3d 1567, 1571 (10th Cir.1993). Rather, we look to the factual circumstances surrounding the plea to determine whether the petitioner would have proceeded to trial. *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001).

Coercion is an affirmative defense that the Government must disprove only after a defendant has raised the issue. *United States v. Falcon*, 766 F.2d 1469, 1477 (10th Cir. 1985). As noted, it is unlikely that Mr. Hernandez could have met his initial burden in establishing coercion. Moreover, as the Government describes, testimony from at least one witness directly contradicts Mr. Hernandez's coercion theory, as does the evidence of how Mr. Hernandez benefitted from the plea agreement (by saving his marital residence form government seizure and by getting a two level reduction for acceptance

of responsibility).

Mr. Hernandez's attorney thus was not constitutionally deficient for failing to pursue this defense. Instead, the court considers it a reasonable strategic decision to encourage a guilty plea. *Bullock*, 297 F.3d at 1044.

D.     Appeal

Mr. Hernandez maintains that his attorney was ineffective for failing to raise the above issues on appeal. Given that the above arguments are meritless, however, this court cannot find Mr. Hernandez's attorney constitutionally ineffective for failing to address them.

E.     Per Se Ineffective Assistance

In addition to the specific instances of alleged misconduct Mr. Hernandez raised above, he also filed two "notices" and a supplemental memorandum addressing his attorneys' ineffectiveness in general. Specifically, Mr. Hernandez discusses disciplinary actions against his attorneys and one attorney's personal medical issues as a way to bolster his claim that he was deprived of constitutionally effective assistance. Mr. Hernandez seems to be suggesting that later disciplinary actions against his attorneys rendered them per se ineffective during his case. Mr. Hernandez first asserts that two of his appointed attorneys were disbarred for misconduct that occurred in the context of his case. There are no documents in the record to support that claim.

Attorney W. Geary Jaco was appointed to represent Mr. Hernandez from September 2004 to January 2005. According to a letter from the Office of the Chief

9

Disciplinary Counsel of Missouri, attached to Mr. Hernandez's Notice (doc. 889), Mr. Jaco was in fact disbarred by the Missouri Supreme Court in August 2006. But there is no suggestion whatsoever that the disciplinary action was a result of any action taken on Mr. Hernandez's case.

Court-appointed Attorney Bob L. Thomas represented Mr. Hernandez from January 2005 until June 2007. Mr. Thomas has not been disbarred, although he was suspended from practice by the State of Kansas in October 2008. *In re Thomas*, 287 Kan. 88 (2008). Nothing in the court's opinion, however, indicates that Mr. Thomas was disciplined for a specific action in Mr. Hernandez's case.

Mr. Hernandez also seems to argue that his attorneys were constitutionally ineffective merely because they were disciplined for behaviors that may have overlapped with the time period they were assigned to his case. The court is unwilling, however, to find that later disciplinary actions constitute per se ineffective assistance. The Supreme Court has explicitly held that "[u]nder the *Strickland* standard, breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel." *Nix v. Whiteside*, 475 U.S. 157, 165 (1986); *see also United States v. Stevens*, 978 F.2d 565, 567-68 (10th Cir. 1992) (holding legal assistance provided by disbarred attorney is not per se ineffective under the Sixth Amendment); *United States v. Henderson*, Nos. 00-40109-01, 04-3282, 2006 WL 2255694, at *11 (D. Kan. 2006). Instead, the court must evaluate specific allegations of ineffective conduct using the *Strickland* standard. *Stevens*, 978 F.2d at 568.

The same is true with Mr. Hernandez's complaints about Mr. Thomas's personal health problems. Mr. Thomas shared with Mr. Hernandez and with the court that he had suffered from depression. In addition, near the end of his representation of Mr. Hernandez, Mr. Thomas had a herniated disc in his back that was to require surgery. Although Mr. Hernandez's supplemental memorandum references alcohol abuse and anti-psychotic medications, those facts are not supported by the record. And regardless, the court has found no authority to suggest that depression or back surgery would render an attorney per se ineffective. *See, e.g.*, *Williams v. Taylor*, 163 F.3d 860, (4th Cir. 1998) (accepting the trial court's finding that an attorney's legal work was not adversely affected by his depression until after the petitioner's trial), *overruled on other grounds* 526 U.S. 1050 (1999); *United States v. Mock*, No. 98-3053, 1999 WL 1285829, at *7 (D. Kan. Dec. 3, 1999) (finding no indication that counsel's depression resulted in incompetent performance in the case). As such, the court must evaluate specific instances of alleged ineffective behavior. The above analysis does exactly that and concludes that Mr. Thomas did not provide ineffective assistance.

F. The Court's Alleged Neglect

The court also wishes to address Mr. Hernandez's contention that it ignored his pleas for a new attorney and instead merely admonished Mr. Thomas with leading questions, intended to rehabilitate him to continue representation. Mr. Hernandez contends that this court

> knowingly appointed and maintained counsel . . . whom it actually and

11

> factually knew to be profoundly mired in professional and personal financial, emotional, psychological, physical and substance abuse problems which prevented each attorney from providing Hernandez with even the most basic functions of criminal defense counsel, much less effective counsel from whose advice a knowing and voluntary plea may be entered.

(Doc. 908, p. 1.)

The court was diligent about ensuring that Mr. Hernandez received effective representation and took care to address concerns about Mr. Thomas. For example, during a hearing on July 25, 2006, this court spoke with Mr. Hernandez and Mr. Thomas during a sidebar conversation about Mr. Thomas's disclosure to Mr. Hernandez that he had been suffering from depression (doc. 903). The court, and Mr. Thomas, wished to make sure that Mr. Hernandez was fully aware of Mr. Thomas's health problems and had an opportunity to request that he be removed from the case. Mr. Hernandez, however, asserted that he wished to have Mr. Thomas remain as his attorney.

On August 15, 2006, immediately before trial was to begin, Mr. Hernandez presented to the court a pro se motion for a new attorney (doc. 556). The court conducted an in camera hearing and went through each allegation Mr. Hernandez made as to why Mr. Thomas should be removed (doc. 896). For example, Mr. Hernandez claimed in his motion that Mr. Thomas failed to contact possible witnesses to testify on behalf of Mr. Hernandez. Mr. Thomas explained before the court that the potential witnesses were represented by counsel and that their attorneys would not allow him to interview them (doc. 896, p. 22). The court explained to Mr. Hernandez that this was

12

proper procedure for an attorney in contacting witnesses.

Mr. Hernandez also represented to the court that Mr. Thomas had been suspended. Mr. Thomas corrected that statement, representing that he had been removed from a case for failing to file a brief on time, but that he had not been suspended (doc. 896, p. 12-14). Additionally, the issue of Mr. Thomas's depression came up again, and this court confirmed with Mr. Thomas that he felt physically and psychologically able to continue representing Mr. Hernandez (doc. 896, p. 15).

At the conclusion of the hearing and after addressing each specific contention Mr. Hernandez raised, this court concluded that Mr. Thomas "has given you sound legal advice, has followed up on the factual issues that you have given him, and . . . has done all the things that a lawyer is expected to do to help their client." (Doc. 896, pp. 41-42.) The court therefore denied Mr. Hernandez's motion.

In May and June 2007, the court was again faced with the question of Mr. Thomas's performance. In connection with Mr. Hernandez's sentencing hearing, Mr. Thomas had scheduling difficulties and failed to file habeas writs as scheduled. He represented to the court that he had voice mail difficulties and that he was scheduled to have back surgery. The court again wished to confirm with Mr. Hernandez that he understood the situation and wished to continue with Mr. Thomas as his appointed attorney. At that time, Mr. Hernandez expressed his desire for a new attorney (doc. 896, p. 56), and the court granted that motion.

Thus, the record reflects this court's diligence in ensuring that Mr. Hernandez had

13

effective representation, that he was aware of his attorney's difficulties, and that he was given an opportunity for a new attorney when Mr. Thomas was having trouble meeting court-imposed deadlines.

G.   Other arguments not properly before this court

In his supplement memorandum (doc. 908), Mr. Hernandez contends that this court erred "in denying his repeated requests to relieve both appointed lawyers, Mr. Jaco and Mr. Thomas [and] in accepting the guilty plea." These arguments are procedurally defaulted because Mr. Hernandez failed to raise them on direct appeal. When a petitioner "fails to raise an issue on direct appeal, he is barred from raising the issue in a § 2255 proceeding, unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered." *United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996).

Additionally, Mr. Hernandez contends that the court erred "in denying his repeated requests to withdraw his guilty plea" (doc. 908). That was Mr. Hernandez's main argument on appeal, and he may not raise in his § 2255 motion any issue that the Tenth Circuit decided on direct appeal. *United States v. Prichard*, 875 F.2d 789, 791 (10th Cir. 1989) ("Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255."); *see also United States v. Warner*, 23 F.3d 287, 289 (10th Cir. 1994) ("[T]he issues Defendant raised in his § 2255 motion had either been decided on direct appeal or should have been raised on direct appeal and were therefore procedurally

14

barred."). Indeed, the Tenth Circuit addressed this argument and concluded that the district court did not err in denying Mr. Hernandez's motion to withdraw his plea. *Hernandez*, 277 Fed. App'x at 777. Thus, Mr. Hernandez may not relitigate this issue under the auspices of a § 2255 petition.

Mr. Hernandez also raises new ineffective assistance claims in his supplemental memorandum concerning Mr. Jaco. Mr. Hernandez contends that Mr. Jaco "did not discuss the facts of the case, the purported evidence against him, the discovery provided by the government, possible defenses and refused Hernandez's repeated requests for visits at the CCA jail, for communication by writing or orally" (doc. 908, p. 2). According to Mr. Hernandez, "if Mr. Jaco had done his job in effectively representing Hernandez in the earlier stages of this matter, he would not have pled guilty and would have demanded trial (doc. 908, p. 3).

In a prior order, this court made perfectly clear that Mr. Hernandez could file a supplement memo in support of his § 2255 petition, but that due to timeliness concerns, he could not amend his petition to raise any new arguments. (Doc. 881.) These new allegations about Mr. Jaco's representation do not relate to Mr. Hernandez's original arguments that his plea was unknowing because he was not aware of elements, penalties, the safety valve, or a possible coercion defense. In addition these new allegations are vague and conclusory and offer no suggestion as to how Mr. Jaco's alleged inefficiencies prejudiced Mr. Hernandez. Accordingly, these allegations cannot serve as the basis for § 2255 relief.

15

## 3. Certificate of Appealability

Effective December 1, 2009, Rule 11 of the Rules Governing Section 2255 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).[3] To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Saiz v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)). For the reasons stated above, Mr. Hernandez has not made a substantial showing of the denial of a constitutional right. The court therefore denies a certificate of appealability as to its ruling on defendant's § 2255 motion.

**IT IS THEREFORE ORDERED BY THE COURT** that Mr. Hernandez's motion pursuant to § 2255 (doc. 872) is denied.

---

[3] The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability. *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

**IT IS SO ORDERED** this 11th day of June, 2010.

                                        s/ John W. Lungstrum
                                        John W. Lungstrum
                                        United States District Judge